**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: May 8, 2024
Date Decided: August 28, 2024

Thomas E. Hanson, Jr., Esquire
William J. Burton, Esquire
BARNES & THORNBURG LLP
222 Delaware Avenue, Suite 1200
Wilmington, Delaware 19801

Blake Rohrbacher, Esquire
Matthew W. Murphy, Esquire
Sandy Xu, Esquire
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801

Re:   *MKE Holdings, Ltd. v. Schwartz*, C.A. No. 2018-0729-SG

Dear Counsel:

Before me currently is Defendants' Motion for Summary Judgment (the "Motion").[1] Between the two case-dispositive peaks of the motion to dismiss and trial on the merits, in the intervening vale of near-futility,[2] resides the summary judgment motion, in equity if not at law. As this Court has repeatedly pointed out, issues in Chancery are but seldom resolved by such motion practice.[3] This matter is

---

[1] Defs.' Mot. for Summ. J., Dkt. No. 156. Unless otherwise noted, capitalized terms have the same meaning as in my prior decisions. *See MKE Hldgs. Ltd. v. Schwartz*, 2019 WL 4723816 (Del. Ch. Sept. 26, 2019); *MKE Hldgs. Ltd. v. Schwartz*, 2020 WL 467937 (Del. Ch. Jan. 29, 2020).

[2] Any promotion of futility here may be ascribed to the presiding judge, the author of this Letter Opinion, who authorized this motion. The motion was ably briefed and argued by counsel on both sides.

[3] *See, e.g.*, *Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*, 1998 WL 731660, at *3 (Del. Ch. Oct. 9, 1998) (". . . summary judgment, with ever-lurking issues of fact, is a treacherous shortcut."); *Frazer v. Worldwide Energy Corp.*, 1990 WL 61192, at *5 (Del. Ch. May 3, 1990).

no exception. I have reviewed the record submitted by the parties and the briefing on the Motion. I heard oral argument on the Motion on April 17, 2024.[4] For the reasons explained below, the Motion is denied.

By way of a brief background, in 2013, MKE Holdings Limited ("MKE") and David W. Bergevin ("Bergevin" and collectively with MKE, the "Plaintiffs") became members and Class A unit holders in Verdesian Life Sciences, LLC ("Verdesian"), a company formed and operated by Defendant Paine Schwartz Partners, LLC ("Paine").[5] The interests resulted from Verdesian acquiring Plaintiffs' businesses.[6] Verdesian's former managers included Kevin Schwartz, David Buckeridge, Angelos Dassios, David Browne, Robert Berendes, Jeffrey R. Grow, and Alexander Corbacho (the "Defendant Managers" and collectively with Paine, the "Defendants").[7] In connection with selling their businesses to Verdesian, Plaintiffs received certain preemptive rights.[8]

Subsequently, on October 29, 2013, Specialty Fertilizer Products, LLC ("SFP") reached out to Verdesian regarding a potential sale of SFP.[9] As part of the

---

[4] Mot. for Summ. before Vice Chancellor Sam Glasscock dated 4.17.24, Dkt. No. 183.
[5] Pls. MKE Hldgs. Ltd. & David W. Bergevin's Answering Br. in Opp'n to Defs.' Mot. for Summ. J. ("Pls.' AB"), Ex. 1 at 36:21–37:13, Dkt. No. 163; Transmittal Aff. Sandy Xu, Esq. in Supp. of the Opening Br. in Supp. of Defs.' Mot. for Summ. J. ("Xu Aff."), Ex. 1 at 32:3–41:18, Dkt. No. 158; Xu Aff., Ex. 2 at 38:13–19, Dkt. No. 158; First Am. Verified Compl. of MKE Hldgs. Ltd. & David W. Bergevin ¶¶ 26, 36–38, Dkt. No. 27 ("First Am. Compl.").
[6] Pls.' AB, Ex. 1 at 36:21–37:13, Dkt. No. 163; First Am. Compl. ¶¶ 36–38.
[7] First Am. Compl. 1–2.
[8] Xu Aff., Ex. 1 at 73:20–74:9, Dkt. No. 158; Xu Aff., Ex. 2 at 77:21–78:2, Dkt. No. 158.
[9] Pls.' AB, Ex. 17, Dkt. No. 164.

diligence process in connection with the acquisition, SFP's broker notified Paine that SFP had new sales programs involving distributors taking earlier shipments, which the broker believed would result in a $9 million downward adjustment to SFP's balance sheet ("SFP's Broker's Warning").[10] KPMG created the KPMG Report for Verdesian as part of the diligence process, which also discussed SFP's new programs.[11] KPMG noted that these programs potentially resulted in a one-time benefit in SFP's 2013 earnings, by accelerating sales that typically would have occurred in 2014 ("KPMG Warning").[12] In addition, United Suppliers, Inc. ("United Suppliers"), SFP's largest customer,[13] communicated that their inventory of SFP's product was higher than expected, although they expected their purchases with SFP to grow by 20 percent ("United Supplier Warning" and collectively with SFP's Broker's Warning and KPMG Warning, the "Warnings").[14]

During the financing process, Paine solicited potential outside co-investors[15] and provided them with information on SFP, including the KPMG Report.[16] By April 2014, the fundraising was essentially complete, with an over-subscription of investors.[17] On June 1, 2014, Verdesian issued the required "Notice of Preemptive

---

[10] Pls.' AB, Exs. 17, 18, Dkt. No. 164; Pls.' AB, Ex. 19, Dkt. No. 165.
[11] Xu Aff., Ex. 18 at 3590, Dkt. No. 159.
[12] *Id.*
[13] *Id.* at 3593.
[14] *Id.* at 3590; Pls.' AB, Ex. 14 at 63:5–64:2, Dkt. No. 164.
[15] Xu Aff., Ex. 25, Dkt. No. 159.
[16] *Id.*; Xu Aff., Ex. 27 at 1106–07, Dkt. No. 159.
[17] Xu Aff., Ex. 23 at 889, Dkt. No. 159.

Rights" to Plaintiffs and shortly after, Plaintiffs chose to exercise their preemptive rights, and invest funds towards the acquisition.[18] The SFP transaction closed on July 1, 2014.[19] In the years that followed the transaction, SFP's sales declined, with its last twelve months March 2015 sales falling $15.1 million behind fiscal year 2013.[20]

After reviewing the losses reported in Verdesian's 2016 K-1 in May 2017,[21] MKE issued a books-and-records demand to Verdesian on October 12, 2017.[22] On November 28, 2017, Verdesian produced some of MKE's requested documents.[23] On December 5, 2017, Verdesian produced additional documents in response to a follow up, including the KPMG Report.[24]

Plaintiffs filed a Complaint on October 9, 2018,[25] and a First Amended Complaint on January 14, 2019.[26] Defendants filed a Motion to Dismiss the First Amended Complaint on March 1, 2019.[27] On September 26, 2019, I issued an opinion granting Defendants' Motion to Dismiss Plaintiffs' derivative claims.[28] On

---

[18] Xu Aff., Ex. 24, Dkt. No. 159; First Am. Compl. ¶ 52.
[19] First Am. Compl. ¶ 51.
[20] Pls.' AB, Ex. 75 at 3, Dkt. No. 173.
[21] Pls.' AB, Ex. 82 at 6–7, Dkt. No. 175.
[22] Pls.' AB, Ex. 86 at 3, Dkt. No. 175.
[23] *Id.*
[24] *Id.* at 1; First Am. Compl. ¶ 46.
[25] Verified Compl., Dkt. No. 1.
[26] First Am. Compl.
[27] Defs.' Mot. to Dismiss, Dkt. No. 36.
[28] *See MKE Hldgs.*, 2019 WL 4723816, at *9–13.

January 29, 2020, I issued an opinion denying in part and granting in part Defendants' Motion to Dismiss Plaintiffs' direct claims.[29] Plaintiffs' remaining breach of contract, fraud, and aiding and abetting fraud claims are in connection to the solicitation of Plaintiffs' equity contribution for the SFP acquisition and the Defendants' failure to disclose the Warnings.[30] On February 14, 2024, Defendants filed a Motion for Summary Judgment on the remaining claims.[31] The parties completed their briefing for the Motion on April 8, 2024.[32] I heard Oral Argument on the Motion on April 17, 2024 and I advised the parties to explore the possibility of settlement.[33] On May 8, 2024, the parties informed me that they were unable to reach a settlement agreement and I consider the matter submitted as of that date.[34]

Summary judgment is proper if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.[35] "[T]here is no absolute right to summary judgment, and it is within the discretion of the presiding judicial officer to require a developed record before rendering a decision on the merits."[36] "[T]he court may, in its discretion, deny summary judgment if it decides upon a

---

[29] *MKE Hldgs.*, 2020 WL 467937, at *16.
[30] *See id.*; Pls.' AB.
[31] Defs.' Mot. for Summ. J., Dkt. No. 156.
[32] *See* Reply Br. in Further Supp. of Defs.' Mot. for Summ. J., Dkt. No. 178 ("Defs.' RB").
[33] Mot. for Summ. J. before Vice Chancellor Sam Glasscock dated 4.17.24, Dkt. No. 183.
[34] Letter to the Honorable Sam Glasscock III from Matthew W. Murphy, Esq., Providing a Further Status Update and Req. Ct. Action, Dkt. No. 186.
[35] *Mason v. Network of Wilm., Inc.,* 2005 WL 1653954, at *2 (Del. Ch. July 1, 2005).
[36] *Gerald N. & Myrna M. Smernoff Rev. Trs. v. King's Grant Condo. Ass'n*, 2022 WL 6331860, at *1 (Del. Ch. Oct. 10, 2022) (footnote omitted).

preliminary examination of the facts presented that it is desirable to inquire into and develop the facts more thoroughly at trial in order to clarify the law or its application."[37]

Defendants assert that summary judgment is appropriate because Plaintiffs' claims are not timely and, even if the claims are timely, Plaintiffs cannot prove *scienter* to support their claims of fraud and aiding and abetting fraud, or bad faith to support their claim of breach of Operating Agreement.[38] As I indicated at the April 17, 2024 oral arguments, Defendants face a difficult task in achieving summary judgment on the grounds that Plaintiffs' claims are untimely, or that they otherwise cannot prove *scienter* or bad faith, because those determinations require fact-intensive inquiries.[39] After reviewing the record as it currently stands, I find my skepticism was warranted.

First, I conclude it is appropriate to exercise my discretion to deny summary judgment as to the issue of whether Plaintiffs' claims are timely. Defendants point to the statute of limitations by analogy as demonstrating laches;[40] Plaintiffs contend that the running of the limitations period should be deemed tolled.[41] Plaintiffs

---

[37] *In re El Paso Pipeline P'rs, L.P. Deriv. Litig.*, 2014 WL 2768782, at *9 (Del. Ch. June 12, 2014).

[38] *See* Opening Br. in Supp. of Defs.' Mot. for Summ. J. 19–38, Dkt. No. 157 ("Defs.' OB").

[39] Tr. of 4-17-2024 Oral Arg. on Defs.' Mot. for Summ. J. 77:1–4, Dkt. No. 188.

[40] Defs.' OB 19–20.

[41] Pls.' AB 39–40.

invoke fraudulent concealment to support tolling.[42]  Defendants argue that there is no basis for tolling because there was no fraudulent concealment of information regarding SFP's performance after Plaintiffs' June 2014 investments.[43]  To support this, Defendants point to evidence of how Plaintiffs were "regularly" provided with information about SFP's post-acquisition performance.[44]  However, Plaintiffs cite to some evidence that Defendants continued to push "knowingly false narratives" regarding SFP's poor performance after SFP's acquisition and actively concealed the Warnings.[45]  Given the conflicting evidence, it appears to me that there are genuine disputes of material fact as to whether information explaining SFP's performance after the acquisition was concealed from Plaintiffs.[46]  I conclude that it would be beneficial to inquire into the facts more thoroughly at trial to clarify whether there is a basis for tolling the statute of limitations period for Plaintiffs' claims.

In addition, Defendants argue that even if there is a basis for tolling, Plaintiffs were on inquiry notice of the purported injury within the limitations period.[47]  Defendants contend that Plaintiffs received a "mountain of" documents such that

---

[42] *Id.* at 45. Plaintiffs also invoke equitable tolling. *Id.* at 40.
[43] Defs.' RB 10–11.
[44] *Id.* at 11.
[45] Pls.' AB 39–48.
[46] *See, e.g.*, *Ebersole v. Lowengrub*, 180 A.2d 467, 468 (Del. 1962) (". . . only when the absence of an issue of any material fact . . . is shown may summary judgment be granted on motion of a defendant.").
[47] Defs.' OB 20–21.

Plaintiffs had inquiry notice prior to receiving the KPMG Report and did not need the KPMG Report to learn of their possible claims.[48] This Court, however, does not lightly infer that a plaintiff is "on inquiry notice of his claims simply because he could have pieced together the alleged [wrong] from . . . available information[,]" especially where that requisite information to place the plaintiff on notice "did not appear in one document."[49] As the record currently stands, I cannot find as a matter of law when Plaintiffs received information that would have put them on inquiry notice of their claims, or when a reasonable party exercising reasonable diligence in Plaintiffs' position would have discovered the wrong. Accordingly, it is, in my view, best for the record in this case to be more thoroughly developed at trial prior to a determination of whether Plaintiffs brought their suit in a timely manner. It may prove that Plaintiffs slept on their cause of action and are barred from recovery as a result, but such a determination is best made on a trial record.

Similarly, I find that there are genuine disputes of material fact as to whether Defendants acted with *scienter* or bad faith in failing to disclose the Warnings to Plaintiffs. Defendants contend that the record proves they had no motive to entice Plaintiffs into investing into an already-oversubscribed investment.[50] Plaintiffs aver that the record proves Defendants' motive to defraud Plaintiffs to make sure that

---

[48] *Id.* at 28.
[49] *Weis v. Swanson*, 948 A.2 433, 452 (Del. Ch. Mar. 7, 2008).
[50] Defs.' OB 34–35.

8

they had enough investors for the acquisition and to stop Plaintiffs from bringing a derivative claim to prevent acquisition of SFP.[51] "When an ultimate fact to be determined is one of motive, intention[,] or other subjective matter, summary judgment is ordinarily inappropriate."[52] In cases "[w]here intent or state of mind is material to the claim at issue . . . the [C]ourt should evaluate the demeanor of the witnesses whose state of mind are at issue during examination at trial."[53] While it is difficult to see why Defendants would need to fraudulently induce Plaintiffs into investing when the investment was already over-subscribed, such difficulty is not dispositive on a pre-trial record. In this action involving allegations of fraudulent concealment, allegations of bad faith, and claims of fraud, a trial with live witness testimony is indicated for the Court to understand if the Defendants had motive and intent in failing to disclose the Warnings.

At trial, the burden of proof will rest with Plaintiffs to show that Defendants acted with bad faith, and that tolling prevents application of the statute of limitations which otherwise ran before their complaint was filed. These are not small burdens to overcome. At this stage, the burden is on *Defendants,* to demonstrate entitlement

---

[51] Pls.' AB 59–60.

[52] *Great Hill Equity P'rs IV, LP v. SIG Growth Equity Fund I, LLLP*, 2017 WL 3168966, at *2 (Del. Ch. July 26, 2017) (internal quotations omitted).

[53] *Amirsaleh v. Bd. of Trade of City of N.Y., Inc.*, 2009 WL 3756700, at *4 (Del. Ch. Nov. 9, 2009) (internal quotations omitted).

to a judgment based on uncontested facts of record. This is not the time for a weighing of the evidence.

Accordingly, Defendants' Motion for Summary Judgment is DENIED. I will consider the briefs submitted in connection with Defendants' Motion as pre-trial briefs; the parties, however, are free to file additional pre-trial briefing as they see fit.

To the extent the foregoing requires an Order to take effect, IT IS SO ORDERED.

Sincerely,

*/s/ Sam Glasscock III*
Vice Chancellor

10